UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON
CRIMINAL ACTION NO. 5:18-CR-84-KKC

UNITED STATES OF AMERICA                                      PLAINTIFF

VS.

CLARENCE MICHEL, JR                                           DEFENDANT

---

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes the Defendant, Clarence Michel, Jr., ("Defendant" or "Mr. Michel"), by counsel, and pursuant to this Court's Order dated February 14, 2019 (DE # 43) hereby submits his Sentencing Memorandum as follows:

I.    **Introduction**

On February 14, 2019, Defendant was rearraigned in this matter and entered a plea of guilty as to Counts 1 and 19 through 22 of the Indictment. (DE # 42). Pursuant to paragraph 7 of the Plea Agreement, the parties thereto recommended what they believed were the relevant provisions of the United States Sentencing Guidelines ("Sentencing Guidelines" or "USSG") to be followed for sentencing of Defendant, however acknowledge that such recommendation does not bind this Court. *Id.*

The Presentence Investigation Report ("PSR") in this matter was prepared by Brandon S. Hall, Senior U.S. Probation Officer. Officer Hall calculates a base offense level under the Sentencing Guidelines of 26 and a total offense level of 23 with a criminal history category of III. PSR, at p. 8, para. 29-32; PSR, at p. 18, para. 52. Officer Hall found a reduction by 3 offense levels

appropriate "(a), because the defendant clearly demonstrates acceptance of responsibility and (b), timely provided complete information to the government concerning his own involvement in the offense and/or timely notified authorities of intention to enter plea of guilty thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently[.]" PSR, at p. 8, para. 31. As a result, Defendant's final advisory sentencing range is 57 – 71 months. PSR, at p. 32, para. 103.

For all the reasons set forth herein, Defendant requests a sentence of between 36 – 46 months imprisonment. While Mr. Michel's conduct in the underlying offenses was culpable, a number of characteristics and circumstances, made applicable to this Defendant through the Sentencing Guidelines and not addressed by Officer Hall in the PSR, warrant departure from the recommended guideline range. A sentence of 36 – 46 months is sufficient but not greater than necessary to achieve the objectives under 18 U.S.C. § 3553(a)(2), as it will recognize the seriousness of his offenses, afford adequate deterrence to criminal conduct, and provide Defendant with correctional treatment in the most effective manner.

## II.   Factual Background

Mr. Michel is a 48-year old male that was born in Morgan City, Louisiana, and prior to his arrest, was residing with his young children and wife of over 10 years in Lancaster, Kentucky. PSR, at p. 2; PSR, at p. 19, para. 59. Mr. Michel experienced a good childhood with hardworking parents, and maintained positive and close relationships with them until their respective deaths. PSR, at p. 19, para. 60. Mr. Michel is described by his sister as having a "good heart" and that he would give "the shirt off his back" to those in need. PSR, at p. 19, para. 66.

Keeping true to the sentiment express by his sister, Mr. Michel has a long history of giving back to his community. In addition to providing a number of jobs to highly paid electricians and

other skilled workers through the years, Mr. Michel has spent his personal time giving back, volunteering, organizing events, and donating to worthy causes. Attached hereto, collectively as **Exhibit A**, are certificates of appreciation, plaques of appreciation, and trophies of appreciation in recognition of the time Mr. Michel spends giving back. Additionally, attached hereto collectively as **Exhibit B**, are documents evidencing donations to Kentucky non-profits, his church, a football camp for children, and to the New Orleans community for children to be able to attend a professional basketball game. Lastly, attached hereto collectively as **Exhibit C**, are personal letters written by those Mr. Michel has affected with his good will. These letters show Mr. Michel to have a "huge heart," that he "cares about others more than himself," and that "he goes above and beyond anything that may be required of an employer for those around him." *Id.* Moreover, the community itself shows appreciation through its representatives, evidenced by letters authored by the Fire Chief of Camp Dick fire & Rescue, the Garrard County Sheriff, and Garrard County Parks and Recreation. *Id.* Mr. Michel's love for his community and his employees led to him being bestowed with the designation of Kentucky Colonel by then-governor Steve Beshear. *Id.*

## III.    Argument

The Court shall impose a sentence sufficient, but not greater than necessary to satisfy the objects of 18 U.S.C. § 3553(a)(2). A sentence is sufficient, but not greater than necessary if it: (a) reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense; (b) affords adequate deterrence to criminal conduct; (c) protects the public from further crimes of the defendant; and, (d) provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The Court shall evaluate these factors in light of the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

3

A sentence of between 36 and 46 months imprisonment meets these objectives as it takes into consideration the unique factual basis surrounding this prosecution. Taking these objectives in consideration, together with the directives provided by the Sentencing Guidelines, provide further bases for departing downward from the PSR's Guideline Range.

### a.  Mr. Michel's Offenses

"Under pre-guidelines sentencing practice, courts sentenced to probation an inappropriately high percentage of offenders guilty of certain economic crimes, such as theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement that in the Commission's view are 'serious.'" U.S.S.G. Ch. 1, Pt. A, introductory cmt. 4(d) (2017). "The Commission's solution to this problem has been to write guidelines that classify as serious many offenses for which probation previously was frequently given and provide for at least, a short period of imprisonment in such cases." *Id.* "The Commission concluded that the definite prospect of prison, even though the term may be short, will serve as a significant deterrent, particularly when compared with pre-guidelines practice where probation, not prison, was the norm." *Id.*

"The Commission has also examined its sentencing ranges in light of their likely impact upon prison population." *Id.* at 4(g). Specific legislation applicable at the time the Guidelines were written, "required the Commission to promulgate guidelines that will lead to substantial prison population increases." *Id.* However, specific legislation that should also be taken into consideration is the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act, or the "First Step" Act. Under Title IV of the Act, Sec, 401, 18 U.S.C. 3621(b), relating to imprisonment of convicted persons, is amended (1) by striking "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment," and inserting "shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation,

the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request by the prisoner related to faith-based needs, recommendations of the sentencing court and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to a prisoner's primary residence …." Moreover, 18 U.S.C. 3624(c)(2) is amended by adding that "[t]he Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."

Taking the above into consideration, it is clear that Congress and the Sentencing Guideline Commission take Mr. Michel's crimes seriously, however, they also recognize that sentencing objectives such as deterrence can be achieved even with relatively short periods of imprisonment, and certainly periods of imprisonment that are less than what is advocated for here. Moreover, when reviewing Congress's enactment of the First Step Act, it is clear a policy decision has been made to decrease the prison population, take the prisoner's personal characteristics and circumstances in consideration in carrying out his sentence, and place high regard to alternative custody options for nonviolent offenders. In the present case, Mr. Michel has pleaded guilty to his crimes and recognizes his culpability. In the spirit of the Sentencing Guidelines and the Congress' intent in enacting prison reform, he requests a sentence below the Guideline Range in a range of 36 – 46 months, the low end being the statutory maximum for 4 of the counts to which he has plead guilty, and the high end being the duration set out in the parties' plea agreement which triggers the Defendants' waiver of appellate rights.

### b. Downward Departure

The Sentencing Guidelines provide grounds for departure of sentencing recommendations in criminal cases. In general, the sentencing court may depart from the applicable guideline range

if there exists an aggravating or mitigating circumstance. U.S.S.G. § 5K2.0(a)(1)(A). Departures may be based on circumstances of a kind not adequately taken into consideration by the presentence investigation report. U.S.S.G. §§ 5K2.0(a)(2-4). Importantly, if multiple characteristics or circumstances are present in a case, when viewed in isolation, would not warrant departure, the Sentencing Guidelines allow for multiple characteristics and circumstances to be considered together to allow downward departure so long as the comprehensive view lends to an "exceptional" situation. U.S.S.G. § 5K2.0(c). If multiple characteristics or circumstances taken together make the case an exceptional one, and each characteristic or circumstance is present to a substantial degree and identified in the guidelines as permissible grounds for departure, the court may depart from the applicable guideline range. *Id.*

In *Koon v. United States*, 518 U.S. 81 (1996), the Court instructs that "if the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *United States v. Kim*, 364 F.3d 1235 (11th Cir. 2004) (citing *Koon v. United States*, 518 U.S. 81 (1996)). A sentencing court possesses a "special competence" to make this determination because of its "vantage point" and "day-to-day experience in criminal sentencing" necessary to determine whether the facts are sufficiently extraordinary to warrant a departure. *Koon,* 518 U.S. at 98, 99.

"Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside of the heartland of cases in the Guideline." *Id.* This analysis requires "a refined assessment of the many facts bearing on the outcome, informed by [the sentencing court's] vantage point and day-to-day experience in criminal sentencing." *Id.* "A district court may depart from the applicable Guideline range if 'the court finds that there exists an aggravating or mitigating

circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *United States v. Crouse*, 145 F.3d 786, 789 (6th Cir. 1998) (quoting 18 U.S.C. §3553(b)).

*Koon* discussed the factors that may be considered by a district court in determining whether a departure from the Guidelines is warranted. The Court identified "encouraged factors," which are "those the commission has not been able to take into account fully in formulating the guidelines." *Id.* at 94 (citing U.S.S.G. §5K2.0)). The Court also discussed "discouraged factors," which "are those not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." *Id.* at 95 (quoting 1995 U.S.S.G. ch. 5, pt. H, intro. comment.)). Although discouraged factors are "not necessarily appropriate," to rely upon in all circumstances, they should be relied upon "in exceptional cases." *Id.*

In the present case, a number of characteristics and circumstances warrant a downward departure from the recommended sentencing range provided in the Presentence Investigation Report. Specifically, the following Sentencing Guideline provisions provide the strongest grounds in this case to warrant a downward departure: § 5H1.6: Family Ties and Responsibilities; § 5H1.11: Civil or Community Contribution; and § 5K2.0, Sec. 17: a potential to pay Extraordinary Restitution.

### c.   Special Characteristics and Circumstances

#### i.   § 5K2.0(c): Aggregate Analysis

Section 5K2.0(c) of the Sentencing Guidelines provides in full as follows:

The court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if (1) such offender characteristics or other circumstances, taken together, make the case an exceptional

one; and (2) each such offender characteristic or other circumstance is (A) present to a substantial degree; and (B) identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted.

When considering in aggregate the impact the Defendant's sentence has on third parties, his contribution to his community, his charitable service and employment-related contributions, and his potential ability to pay extraordinary restitution, downward departure is warranted in this case.

### ii.  § 5H1.6: Impact on Third Parties

"The Sentencing Guidelines treat 'good works' and community ties as specific offender characteristics, not ordinarily relevant to sentencing." *United States v. Jones*, 158 F.3d 492 (10th Cir. 1998) (citing U.S.S.G. § 5H1.6). In the Sixth Circuit, "[a] defendant's ties to a community is normally a discouraged factor under the Guidelines." *United States v. Crouse*, 145 F.3d 786, 790 (6th Cir. 1998) (citing U.S.S.G. §5H1.6). However, consideration of the loss of a defendant's business as a result of the sentence, and the impact on the community therefrom, "is not categorically prohibited by the Guidelines." *Id.*

In the present case, a lengthy period of incarceration will have a detrimental impact on Mr. Michel's family businesses and business prospects. In such a case, hundreds of employees will be adversely affected by his prolonged absence, and the community in which his employees work will be similarly affected.

The Second Circuit has held that a defendant's sentence which causes extraordinary hardship on his employees may be considered in determining whether a downward departure is warranted under the Sentencing Guidelines. *United States v. Milikowsky*, 65 F.3d 4 (2nd Cir. 1995). In *Milikowsky*, the defendant (Milikowsky) "requested a downward departure … that would allow the court to sentence him to probation rather than prison, on the basis of the effect imprisonment would have on his family and on his employees …." *Id.* at *6. The Court notes that "[a]mong the

permissible justifications for downward departure, [the Second Circuit has] held, in the need, given appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties." *Id.* at *7.

In finding that the defendant's imprisonment may pose an extraordinary hardship on his employees, the *Milikowsky* court considered unrebutted letters and testimony from family members, employees, and business associates of the defendant. The record concluded that the defendant was "the only individual with the knowledge, skill, experience, and relationships to run [the business], on a daily basis[.]" *Id.* at *8. As such, the business' continued livelihood, and consequently the business' employees' livelihood, depended entirely on the defendant's personal involvement. *Id.*

Applicable to this Circuit, in *United States v. Holz*, 118 Fed. Appx. 928, 940-41 (6th Cir. 2004), just as in *Milikowsky*, the Court found the defendant "to be indispensable to a business or project with employees and large financial obligations," and that the defendant's "family circumstances and business impact [were] each 'present to a substantial degree'" to warrant downward departure. (quoting U.S.S.G. §5K2.0(c)). The economic considerations in *Holz*, were "similar to those in *Milikowsky*, where business impact was the *sole* grounds for a departure, as opposed to the combination of family circumstances and business impact, as is the case here." *Id.* at 941.

Mr. Michel has contributed to the creation of a number of jobs in economically depressed areas. His businesses provide high paid, blue collar jobs to skilled workers in various mechanical trades. While at this point, his businesses are under his wife's operation, there can be no question that Mr. Michel is an integral and necessary part of the businesses' ongoing success. This sentiment is furthered by the letters of support authored by his employees and community members. *See*

**Exhibit C**. Here, departure is warranted so that Mr. Michel's imprisonment does not impose any more of an extraordinary hardship on his employees and their communities than it already is likely to do.

     iii.  **5H1.11: Charitable Service and Employment-Related Contributions**

Section 5H1.11 of the Sentencing Guidelines contains a policy statement that "military, civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a sentence should be outside of the applicable guideline range." However, a "charitable work is not a forbidden ground for departure[.]" *United States v. Crouse*, 145 F.3d 786, 790 (6th Cir. 1998) (citing U.S.S.G. §5H1.6)); *See United States v. Tocco*, 200 F.3d 401, 432-33 (6th Cir. 2000) (example of "discouraged factors" include a defendant's civic contributions and his family ties and responsibilities). As stated, if a discouraged factor is present to an extraordinary degree, departure may still be appropriate.

In *United States v. Kuhn*, 351 F. Supp. 2d 696 (E.D. Mich. 2005) the Court granted the defendant a downward departure from the recommended sentence guideline based on his employment history and charitable deeds under §§ 5K2.0(c) and 5H1.11, respectfully. The Court concluded, based on the facts in the record concerning the defendant's charitable contributions, good works, community service, and employment history, a downward departure was justified.

The defendant (Kuhn) was the former superintendent of a wastewater treatment plant, convicted for improperly discharging a pollutant into navigable waters, causing an employee to falsify test results in records submitted to the government, and signing and submitting a report to the government that he knew contained false information. Kuhn argued "his employment and his charitable deeds [were] so substantial, when considered together, to warrant downward departure."

*Id.* at 703. He asserted "that he was a dedicated employee … from 1971 until 2000," and "was also involved in numerous charitable acts and has a history of enriching the community." *Id.*

The *Kuhn* Court notes that a defendant's "employment history can be combined with his community service to justify departure." 351 F.Supp.2d at 705. "[I]f the Court finds that the defendant's involvement in the community is sufficiently unusual and 'outside of the heartland of cases' to warrant such a departure and involve a significant contribution of the defendant's time, skill, and personal involvement," "a district court, under Sixth Circuit precedence, may depart downward in [a] case." *Id.* at 706 (citing *Tocco*, 200 F.3d at 433-34).

Collateral employment consequences based on a defendant's sentence may also be considered in a downward departure under this section. *United States v. Jones*, 158 F.3d 492  (10th Cir. 1998) ("After reviewing the record, we conclude that district court did not abuse its discretion in determining the collateral employment consequences Mr. Jones would suffer as a result of incarceration, the economically depressed area in which Mr. Jones lived would attach unique burdens to his incarceration.") ("Mr. Jones' support in the community is insufficiently 'extraordinary' to support a departure on this basis alone, the district court did not abuse its discretion by relying on this factor as one of several grounds supporting a departure.") When considering Mr. Michel's extensive charitable history, in conjunction with his long history of employment and job creation, downward departure is warranted.

### iv.  § 5K2.0, Sec. 17: Extraordinary Restitution

The Sixth Circuit has held that extraordinary restitution is not a prohibited factor in considering a downward departure from the Sentencing Guidelines. *See United States v. DeMonte*, 25 F.3d 343, 346 (6th Cir. 1994) ("we have acknowledged that restitutionary payments may constitute 'exceptional circumstances' that justify a downward departure.") *See also United States*

*v. Kim*, 364 F.3d 1235 (11th Cir. 2004) ("We join the Second, Third, Fourth, Sixth, Seventh, Eighth, and Ninth Circuits and hold that extraordinary restitution is not a prohibited factor.").

Factors to consider when making a departure as a result of extraordinary restitution include the degree of voluntariness; the efforts to which a defendant went to make restitution; the percentage of funds restored; the timing of the restitution; and whether the defendant's motive demonstrates sincere remorse and acceptance of responsibility. *United States v. Kim*, 364 F.3d 1235 (11th Cir. 2004).

In the present case, Mr. Michel has an opportunity to make extraordinary restitution, and will be able to expedite his restitution payments if granted a downward departure.

## IV.    Conclusion

This Court has authority to consider the foregoing characteristics and circumstances in making its sentencing decision. Although the above factors may be discouraged according to the guidelines, each individually is present to a substantial degree and outside of the heartland of cases. When applying the foregoing special characteristics and circumstances in the aggregate pursuant to § 5K2.0(c), downward departure is warranted. As such, Mr. Michel respectfully requests a sentence of imprisonment in the range of 36 – 46 months.

Respectfully submitted,

McBRAYER PLLC
201 East Main Street, Suite 900
Lexington, KY  40507
(859) 231-8780
dguarnieri@mcbrayerfirm.com


 */s/ David J. Guarnieri*
DAVID J. GUARNIERI
ATTORNEY FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the ____day of May, 2019, a true and correct copy of the foregoing was served via email and electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: